23-814 and 23-855, Santiago v. Fischer. Okay. Ms. Greenwald. Thank you, Your Honor. Good morning, and may it please the Court. Blair Greenwald on behalf of the State Appellants. The same mistake occurred here, as in Vincent and Aponte, and the Court should grant the same relief, specifically by vacating the judgment and remanding for appropriate consideration of impediments. The fundamental problem with the District Court's decisions in this case is that the Court conflated qualified immunity and causation, leading to further errors in exclusion of evidence and argument. Well, that may be so, but I guess the question is, what evidence did you proffer that would show impediments and a lack of causation? I mean, it seems to me there are two different things in my mind at least. One has to do with compensatory damages and one with punitive damages. But with respect to compensatory damages, the problem in Vincent 2 was a lack of showing of causation, or at least not enough of a convincing showing to merit summary judgment on damages. So what is it here that would show that if the commissioner and the defendants, if they had undertaken promptly to do something about this problem, it still would not have helped the point, in effect? So, as Your Honor mentioned, a lot of this evidence goes to both compensatory damages and, in a different respect, punitives, and I'd like to address both. The causation issue is about compensatory damages, right? Yes, Your Honor, and to address that first, some of this evidence was allowed at trial and other evidence was not, so I'll go through both and be clear. Tell me what's not. Excuse me, what I'm asking you is very specifically, what did you offer that would show a lack of causation, or tend to show a lack of causation, be relevant to that subject, that was not allowed, and why was it going to causation? Yes, so the defense was not allowed to argue that given the lack of sentencing minutes, which are still missing here, and the silent commitment sheet that did not indicate PRS either way, that that would have prevented them from unilaterally releasing him because it would have been flatly unlawful for them to release him without knowing whether PRS had, in fact, been pronounced or not, particularly given the plea minutes indication that he agreed to PRS. The defendants also offered corroborating evidence, which was excluded, of the 2008 state legislation, which acknowledged that they did not have authority to unilaterally release people in precisely this type of situation. Do they have the authority to unilaterally release people if they know that it wasn't pronounced at sentencing? I'm sorry, Your Honor. So if they had the minutes and they knew it wasn't pronounced at sentencing, could the prison officials just release Santiago even if they knew that it wasn't pronounced? Is that within their authority? So the arguments in this case, we have not presented that as an impediment. We have separate arguments in the class action. I understand their authority to release or not to release. So you're saying, well, you don't know for sure whether it was pronounced or not at sentencing. They couldn't unilaterally release the person. Could they generally unilaterally release the person if they knew that it wasn't pronounced at sentencing? Or would that still be something that has to be done by a court? Because even if it wasn't pronounced at sentencing, there is a statute that requires it, right? So what is their authority? Precisely, Your Honor. So our position is that even in that situation where they have the sentencing minutes, that there would still be an impediment based on state law and the fact that they need to go get court approval in order to do this, and that they did not have authority even to go to the courts to get this approval until 2008. And as Your Honor's question indicates, this is precisely the type of fact-intensive question that the district court should consider, and that was considered in the Baton's litigation conducting precisely this type of Vincent analysis that the court directed. And so you're saying that they didn't have the authority just to release the person. And that was before the jury. I take it in the closing there was this argument that they could have just released the person but kept him imprisoned sort of gratuitously, right? That was the story that was presented here because the defense was prevented. Maybe if they could have done something but not that, like they could have called the district attorney to prompt them to maybe look into the question? They could have done – well, actually the defense here tried to offer corroborating documentation based on the briefs filed by exactly the prosecutor here, contemporaneously with the time period at issue here, showing that the Kings County district attorney was resistant to correcting these kinds of problems at the time. And therefore this goes also to punitive damages. But even if they knew, even if they could have called the district attorney, even if the district attorney were not resistant, I suppose there's degrees of causation, and so you might have different kinds of compensatory damages and especially punitive damages if it's the difference between being able to release somebody or being able to make a phone call to somebody else who might be able to go to court to get the person released.  One, I agree and I think that this also implicates potentially the state courts and what the state court would have done in that situation. But all of this discussion as to what might have happened and what potentially could have been prompted in order to release the plaintiff here shows how fact-intensive an inquiry this is and that this is precisely the type of inquiry that the district court should have done. When you say the district court should have done, what you're really saying is all of these sort of very complicated technical, essentially legal questions are for the jury. Is that not right? You want to introduce evidence. You're not suggesting that as a matter of summary judgment you should have prevailed in this case, are you? I just want to be clear here. We haven't taken a position as to whether if this court corrects the error that we suggest here and remands to the district court that it should follow the blueprint as in Vincent and Aponte and remand for further proceedings for proper consideration of impediments, whether that be on summary judgment. Did you ever make a summary judgment motion on this ground? So we attempted to. The district court said, no, I'm not going to entertain this. The district court was very adamant that causation was not going to be at issue, that it had been already decided because the district court had conflated qualified immunity and causation. But then the arguments you're making, some of them seem factual. That is, the district attorney wouldn't have done anything even if he was prodded to do so. But then some of them are legal because you said a moment ago that the law didn't give your clients the authority to release Santiago. So I guess you're saying that some of it might be for the jury and some of it might be for a motion for summary judgment. Precisely, which is why we think the appropriate path is for the court to follow the blueprint in Vincent and Aponte and leave it to the district court. I thought what was being appealed here were evidentiary decisions by the district court during trial. Did I misunderstand your position? That as well as the post-trial motion. Well, are you telling me that you argued to this court, and I just missed it, which is very possible, that summary judgment should have been, the summary judgment motion should have been considered and should have prevailed? So we have not separately appealed the district court's orders saying, there was an oral motion by the defendant saying we would like to make another summary judgment motion. And the district court was not allowing any further summary judgment motions. But that was not specific to this issue, which was raised in the pre-trial hearings regarding what evidence the defense wanted to offer, because any further summary judgment motions had been cut off. So we want to go back all the way. We want to rewind more than just the trial. You want us to- No, Your Honor. No. But what I would say is that the court's order should allow the district court the discretion to resolve the issues as appropriate. So as has been noted here, some of these issues may be legal and appropriate for the courts to decide. There may be- You say that the district court was wrong to say there are no further issues with regard to causation. You would say that that was the error. Yes. And so then on remand, the district court should entertain both legal arguments and factual arguments about impediments. Exactly right. And that is apparent from the October 2022 pre-trial hearing where the district court refused to consider any further arguments or evidence as to causation. Can I just sort of back up and ask a more fundamental question? I know that it's not really an issue in this appeal, but what's the sort of reasoning of Eerly in the first place? So, you know, in the federal courts, a legislature can require a specific sentence of a mandatory minimum or require that certain sentence be served concurrently or consecutively and whatnot. And if a court doesn't follow that, we say that that's erroneous, right, and they can't follow it. But Eerly says, well, if it's not pronounced in sentencing, it's just like an administrator adding to the sentence and that's not allowed, as if the state statute didn't really exist, right? Is that the problem? What is the logic of this? So Eerly relied on, as the court is well aware, people, X for all, Hill v. Wampler, which was not precisely on all fours. It's not precisely on all fours. One might well take a different view than our court has done about five times, but our court has decided this. I'm just curious what you think about it. Well, they don't like it. They're going to tell you they don't like it. Well, I'd like to hear that, the reason why. So is that your position? So I will say that as a matter of state procedural law, the New York Court of Appeals has agreed that the sentence does need to be pronounced at sentencing. But they say that as a matter of state statute. That's correct. In the federal courts, we have a statute also that says that you need to have an oral pronouncement of a sentence. I'm not sure that the process clause would impose that on the state of New York. I don't know that either, except that our court has said so. But going back to the question of mandatory minimums, I guess you're not an expert in federal procedure. But would you suggest that if a district court failed to impose a mandatory minimum sentence, and the government did not appeal and have that error corrected, that the Bureau of Prisons could just say, well, the judge said two years, but we think that that was unlawful, and it should have been five years, and we're just going to hold him for five years? So I do agree that there are separate questions as to what the Bureau of Prisons could do and what it would be liable for doing. I will say that as we've prosecuted this case, and as this court is aware, we have preserved our argument on qualified immunity, which Indian doesn't directly challenge, which goes towards this question of whether it was clearly established by the time, even after earlier that this was. So I think the reason about these questions about yearly was it does seem that the principle is that the administrative body that runs the prison can't add to the sentence beyond what was pronounced in sentencing, right? That's the principle that we said was clearly established, right? That's correct. So in this case, it seems like there are certain features of this case that might make a difference. So in this case, you have a discussion in open court about the terms of the plea agreement, and the judge talks about the imposition of the post-release supervision, and the defendant agrees that that was agreed to, and that's the sentence he wants imposed. It's true at the later sentencing that the sentencing judge doesn't articulate it, but it's hard to imagine looking at that record that you would think that anyone thought it was the administrator at the prison adding to the sentence as opposed to a mistake that was done in the judicial proceedings, right? That's correct. Does that make this case different? Does that mean that a reasonable person running the prison wouldn't understand it to be they are adding a period of post-release supervision? It is the court still adding it because it was part of the plea agreement. And so then at worst, it was somebody forgot to mention it at the sentencing. And that is our position here. And so would that be a qualified immunity question? You argued that in your brief, that this is distinguishable on the subject of qualified immunity on justice ground. That's correct, Your Honor. So is that open to us on appeal? Like, so are you saying that we should say that actually qualified immunity is available on that reasoning? I mean, to the extent the court wishes to rule in our favor on that issue, we are obviously open to that. I would note that to- Well, I guess I'm curious about that. So is there evidence in the record that suggests that the defendants here knew about the plea agreement and so on? Or does it not matter because it's an objective test about the circumstances? How would we navigate that question? Right. So I do want to say that there is not evidence in the record as to whether defendants had actual knowledge of the plea minutes at the time of the period of liability here. But again, the qualified immunity analysis is objective and what was knowable. So the plea minutes were available and show that he agreed to PRS. But we also acknowledge that this may be a more fact-intensive inquiry and may be appropriate for this court to include in its remand to be considered by the district court. Well, to be precise, I think I'm not wrong about this, but maybe I am. I thought you argued the qualified immunity issue, A, to preserve it for a possible Supreme Court review, and B, that this case is distinguishable on precisely the ground that Judge Menasche referred to. We do, and we think it's appropriate if the court wishes to rule on that. It certainly can. To the extent the court- But I have a factual question about that. And here I very well may be wrong because my memory is a little foggy on it. I thought that this issue was put after the fact to the actual sentencing judge, Justice Reichbach, and he said, uh-uh, there was no- I don't know about any minutes of anything of that sort. You know, this was just- I imposed the sentence that I imposed, and I'm not going to correct it based on some assertion by somebody about something that happened at a previous proceeding. Didn't that happen? Not quite, and I want to correct what- Yeah, tell me exactly what happened. Right. So at the plea hearing, at page, I think, 353- I know that at the- let's skip ahead. Sure. So he- At the plea hearing, I don't think anyone disputes that Mr. Santiago was advised of the supervised release term. Said, let's get this over with. I want to be sentenced and get out of here because time is wasting. I want to get out of Rikers Island. The judge said, no, I need a pre-sentence report. He had a car accident. A different judge then imposes the sentence. The different judge does not impose the supervised release term. But I- So we're all in agreement up to that? So I think Your Honor's memory is excellent on those points. I just want to clarify what happened afterwards. Afterwards. That's what I was asking about. Right. So at the 2010 resentencing hearing before the second judge who imposed sentence but was not present at the plea hearing, the district attorney and counsel for the plaint- I'm sorry, not this counsel, but counsel for Mr. Santiago at that resentencing hearing told the judge that- and, in fact, Mr. Santiago's counsel expressly told the judge there's been no mention of PRS at the plea or at the sentencing and just stated that. Because the DA consented to this relief, the resentencing court stated in the order- I'm excising the PRS term. The order itself, if you look at it, says I reviewed the case file and any available plea or sentencing minutes. So it's not clear whether those were available or were reviewed. And, in fact, I think given that it was expressly stated at the plea hearing that those were not reviewed. Not available or not reviewed. And I will also note that this is boilerplate language that is used in resentencing orders. At the same time, it's also the case that the district attorney did not assert anything about this and agreed to the erroneous assertion by defense counsel at the time that there had not been any reference to this. In 2010, that's correct. In 2010. And I also just very briefly want to note that, at a minimum, the remand here is warranted for punitive damages, which is qualitatively different and which defendants should have been allowed to present evidence as to their subjective- Because you're saying for the compensatory damages, it's about causation and whether they actually were able to make a difference to his release. But for punitive damages, you have to show callous disregard. And so even if they thought erroneously they couldn't do anything, it would still be relevant. But still what you're proposing to present sounded like legal evidence regarding the existence of the statute and the mandatory PRS and so on. And those are arguments that could have been made to the jury in any event about the existence of that law showing the absence of callous disregard, right? We attempted to. The district court said, no, I am not going to allow that evidence or that argument. But we attempted- I'm sorry. And the evidence would have been exactly what? So given the evidence that defendants didn't have the sentencing minutes, they were still unavailable, and defendants could not have lawfully released him without knowing whether PRS had actually been pronounced, the defendants also tried to introduce the 2008 legislation where it was explained by the governor's memorandum that defendants could not just release people unilaterally in this situation. So you had a witness who was going to describe the legislative history? Or were there documents? There were documents, Your Honor. This is at 493 in particular, the pertinent language. That would have corroborated their understanding that they didn't have the authority to, because it seems like that would mean it was a general understanding about the scope of their authority. That's correct, Your Honor. And I also just want to say that we would urge the court to the extent that, at a minimum, punitive damages should be vacated and remanded, that it makes sense for the court to also remand on the compensatory damages analysis in order to conduct the correct analysis here as to all parts and properly consider impediments. Yeah. One of the things that puzzles me about the punitive damages is trying to find – I recognize that there are different – it's a different question whether there is qualified immunity from whether the defendants acted in callous disregard. But once the – once it is established for purposes of qualified immunity, the qualified immunity analysis, that the right was clearly established and that the defendants knew about those decisions that said it was clearly established, what else is left to show callous disregard? So what's left is the potential rebuttal, which is to say the defendants could have testified and presented corroborating evidence saying, what we understood is that in order to fix this early problem, we needed to either get them released or resentenced. But for these reasons, we were impeded, and we realized that these steps – we could not do this unilaterally, and these other steps would have been futile. Did the jury have before it Mr. Annucci's testimony? I think it was in Betances that he just didn't agree with early and he wasn't going to follow it. So, yeah, actually, plaintiff's counsel introduced essentially all of the evidence that was presented in the qualified immunity cases. But what's important here is that the court in Vincent made very clear that qualified immunity is a different question than causation. I understand it's a different question than – we're not talking about – I think we're now talking about punitive damages. And I'm just trying to figure out what else you need when someone is aware not only that the decision has happened, which says this is the law, but also that it's by now clearly established by the time of Santiago. What else – what is the further showing? So I have a legal answer and a factual answer. The legal answer is that the qualified immunity cases hold that what defendants did here was not reasonable. That is a far cry from the high standard required for punitive damages. As a factual answer, the problem here is – It's a far cry, but exactly – I'm asking – I understand that. How is it a far cry? What is different? What is the additional specific finding that the jury has to make beyond not only that it was clearly established, but that the defendants knew it was clearly established? So the – and that's what my factual answer is that the defense was barred from presenting evidence that they believed they had to follow these state court procedures and could not have gotten the necessary cooperation of other state actors. Isn't your argument that in Matances this court said that they needed to do something and sitting on their hands was not sufficient? They needed to do something. But if we're talking about the measure of damages for what they needed to do, it matters what they had the authority to do and what they could reasonably do. Precisely. So if there were evidence that they called the district attorney ten times in prior cases and the district attorney said, I don't care what you're saying. I'm not going to do anything, then it might be reasonable to stop calling him constantly. If the jury thinks that they could have just released Santiago, but in fact the law would not have allowed them to do that, the jury might have awarded damages based on their refusal to do something that they're not allowed to do. And so it's relevant to the scope of the damages whether they did that. And then regardless of their power to do it, punitive damages is based on their subjective callousness toward him. And that's also informed by what they thought they could do and not do. Precisely. So to the extent they weren't allowed to explain why they did what they did and for all of these impediments reasons that would have bolstered that defense, that is why the punitive damages analysis was truncated here and not appropriate. Can I ask about something else? So we said about the factual quirk in this case that the post-release supervision was part of the plea. The other thing about this case is that Mr. Santiago was released not at the end of his term of imprisonment but on early release. That's correct, Your Honor. And the state statute that allows for early release says that when you're released early, the term of imprisonment is held in abeyance and in the interim you're placed on conditional release as long as you behave yourself. And if you do, then you won't have to go back to prison. And if you don't, the prison term that's held in abeyance will be reactivated, which is what happened to him here. So I guess my question is did the term of post-release supervision, the five-year term, make a difference? Because if he were released on conditional release anyway, wouldn't he have been subject to the same release conditions regardless of whether there had been a post-release term of supervision imposed? So Your Honor is exactly correct as to how the state law operates. The term of conditional release did expire before he was caught in Virginia and sent back to New York. And the period of time that the district court says is the time in which he gets or the jury said he gets damages, the district court said he gets damages, is that after the expiration of conditional release or it includes the conditional release when it overlapped with the post-release supervision? It does not include the term of conditional release. That had expired by that time. Okay. Thank you very much, Ms. Greenwald. You guys are in time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Mr. Richter. Thank you. If it may please the court, I'd like to start by talking about what Dock's actual authority was because there's a statute that covers it. It's CPL 380.60. There's a system in place. And this goes to the BOP example that Your Honor provided. What it says is there is an order that comes from the court that goes to Dock's and that conclusively binds Dock's to a sentence. If you look at cases like Murray v. Gord, going back decades, Dock's repeatedly took the position they are bound by the sentencing and commitment order. They cannot modify it. And if there is an error in the sentencing commitment order, you have to go back to the court to fix it. They have been taking that position I think since the 40s. So for them to come in and now typically in those cases Well, but they stopped taking that position when Jenner's law was adopted, right? No. If you look at Murray v. Gord, which came out well after Jenner's law, that's 2003, court of appeals case, they continue taking that position. The key hypocrisy here is if the sentence in the sentencing and commitment order has an error that makes it too long, they take the position they're powerless to fix it. If it happens to be, in their view, too short, they arrogate to themselves the power to fix it and modify it. And what this court said in early and what the court of appeals said unsurprisingly afterwards, given case law like Murray v. Gord, is no, it's a nullity. You're not allowed to rely on it. Also, I want to correct this question about You're not allowed to rely on what? The 2008 case that the court of appeals, I think it's, there's Sperber and there's Garner. They were companion cases. They rely on Murray v. Gord saying, yeah, the sentencing commitment order is binding. That's what controls here. You have no power agency to go above or below it. Well, then what you're extrapolating from that, that since it's the flip side of early and the flip side of Sperber, that if the agency has no authority to add the terms, then because the judgment of the court is controlling, then it follows that they have the power and indeed the obligation to not enforce their own illegal added term. And so once it becomes, certainly once it becomes the judgment of the court that they're not allowed to add it, they automatically have the power to release somebody because they have no power to do anything else. That's what nullity means, at least in my view. And that's what we presented to the jury. The early decision, which, by the way, includes 70.45, that decision was presented. We marked it as evidence. We sent it back and said, this is the order they're not following. They were fully capable of contemplating that. Now, something else. I have a couple of questions about that. One is, what about a circumstance like this, where it's not clear, you don't have the minutes, and you don't know what the sentence that the court imposed, and it might very well have included the term of police supervision, especially because that was provided by the plea agreement. So wouldn't a reasonable person looking at that think that maybe that was part of the sentence, and they wouldn't know whether that was the order that they were bound by? There's actually two answers to that question. One is, there's absolutely no evidence that the administration docs received anything but the sentencing and commitment order. This is an argument that was created in litigation. Two, the sentencing and commitment order still binds. It is the document that says what the sentence is. This is the document that docs repeatedly goes to the state courts and says, we are controlled by, we cannot change it. So it's really irrelevant, because if they, and by the way, even with qualified immunity, it's not an objective test based on what's knowable. If that were true, then we'd go out and see what cops could have looked at and all sorts of other things. It's what they knew at the time. And there's no evidence that anybody knew about this at the time. But there's no evidence either way, because the district court wasn't going to entertain that question, right? No, no. I mean, they never proffered any evidence that they ever knew about this. In fact, the defendants readily admitted, we didn't even know who this person was. Because that's the callous indifference here. This is like throwing a brick off a building. They know what they're doing is bad. They don't know who it's going to hit. They didn't know Jesus Santiago. They didn't know a single thing about him. Because I have another question, which is, I think this is interesting. I mean, you're arguing that they were bound by the sentencing order. And the state is saying, well, there was a state statute that required the PRS, and only the court could excuse them from it, and they didn't have the authority. I don't know what the answer to that question is. But isn't that something the district court should have decided before just determining that causation had been established, and that they had the ability to release Mr. Santiago? No, because there's actually no evidence that the state courts had to weigh in before releasing him. And here's why. The release isn't the issue here. They started enforcing the PRS to incarcerate him. Yes, and that's a point I wanted to query you about. Is it not the case that with respect to Mr. Santiago, the Department of Corrections initiated the proceeding on the violation of the release terms after Early was decided? Correct. But not after Certiorari was denied. They initiated the procedure on, I believe it was June the 12th, 2000, whatever year it is that all this is going on, and the Supreme Court denied Certiorari about two weeks later. And then it's the next month that an ALJ, and this is another thing as far as who gets to do this, it's my understanding that an administrative law judge within the Department of Corrections adjudicates the violation of conditional release in Mr. Santiago's case. Is that wrong? There's multiple different things that starts with the parole violation and then there is a hearing afterwards. However, this muddies, I think, an important distinction, which is sentencing and determining whether or not you have the lawful authority to enforce the term of PRS is separate from incarceration. There's nothing wrong with finding out whether or not you have the authority to actually imprison someone before you start imprisoning them. And in fact, I think that's really a key point here is you don't get to lock somebody up while deciding, trying to figure out whether or not to lock someone up. And my understanding of how the court system works is that granting Certiorari without a stay, or excuse me, denying Certiorari without a stay, that in no way stops the- Stops the effectiveness of the Second Circuit's decision. And it certainly doesn't give them authority to go lock somebody up while they figure out whether or not they have the authority to do so. That's also the problem with the resentencing. You said a moment ago that the reason why it doesn't matter that the court needed to decide this little question is because there was no evidence that the court had to modify the sentence. Correct. But isn't it Mr. Santiago's burden to establish causation? I mean, he is the plaintiff, right? So maybe if it's true what you're saying, he'd have an easy job with it, but he still needs to be held to that burden. Well, you can't prove a negative. Let's go, let's look at the evidence that they actually tried to have admitted. And I think it's worth reading the November 22nd hearing really closely. Because I was there, and I read my opposition's brief, and it was like they were at a different hearing. They offered three categories of information. They wanted to talk about 70.45, which I think the court rightly ruled that at least since early was no defense whatsoever. They wanted to talk about the Office of Court Administration evidence, which they were allowed to completely in their side of the case. Because Judge Matsumoto did modify her ruling, soften it, and allow them to put in this evidence. And the last thing that they wanted to look at was the DA's evidence of resentencing. And the court rightly asked, well, how are you going to get in this alleged resistance? And decided correctly that it was hearsay. Their plan was to have Mr. Annucci, who never represented and never through counsel represented that he had any sort of inner workings. He was just going to say, oh, well, you know, the Kings County District Attorney's Office was being resistant. But there wasn't a single piece of evidence. They never once approached any of the DA's directly. They don't have any personal knowledge of this. What they did is they asked the Office of Court Administration, who shrugged their shoulders. That was in the record. The email, in fact, where they did it. And they didn't get what they wanted. And that's where they stopped. So the idea that this evidence was excluded is just belied by the record. They never tried to offer it. This was created on appeal. And I do think because at bottom- Is it relevant just to go to his state of mind, even if there wasn't objective evidence that there was the resistance? If he thought there was, isn't that relevant evidence in excluding it? Well, he did testify that there was resistance. I mean, I think that he testified that he didn't believe that he had authority to do anything until the state courts weighed in. In fact, I think this court has rightly mentioned in 2016 there's really an open question as to whether or not this agency ever would have complied with early had the state courts not weighed in because they didn't really recognize the authority. It's always been one of the things that puzzles me about qualified immunity. I think it's well established that, for example, a police officer who is forbidden to do something by New York state law still has qualified immunity unless it is clearly established as a matter of federal law, that it's a federal violation, which always seemed to puzzle me because why does this mean that you're behaving like a reasonable police officer if you're doing something that state law forbids? But I think that's the rule. So I'm not sure that the fact that the state law wasn't established or the state law may have been reasonably established makes any difference at all to the qualified immunity question. Well, but once you put early into the equation, which happened well before they started enforcing it, it changes completely. And I do think this is a concerning application of qualified immunity. We're talking about attorneys who run a state agency, one of the largest prisons in America, prison systems. These are people who should really know this area of the law. These are people who should correctly read Wampler. These are people who should look at their own arguments to the Court of Appeals that say, we're not allowed to change this. And I think they should be held to that standard. This isn't a reasonable officer in a shooting in a split second. These are the most experienced people, the people who should be experts in this area of the law, clearly making the wrong decision under state law, decades of state law, and then continuing to make the wrong decision because they just didn't like early and they testified to that under federal law. So I agree with the puzzlement. There's a lot of problems from my side of the V with qualified immunity. But this is a really tough one, I think, especially after early to say, you know what, this was objectively reasonable. And anyway, there's no evidence to, in the record, ever presented, ever proffered, nothing about this being anything but a standard application of early. They had a sentencing and commitment order that didn't have PRS. They penciled it into their computer themselves. They could have deleted it just as easily. And then they went off and enforced it and they locked Mr. Santiago up in violation of his rights to due process. Okay, thank you very much, Mr. Rickner. We'll turn back to Ms. Greenwald on the phone. Just a few quick points. I want to be very clear about what we're talking about when counsel refers to the sentence and commitment order. That is not an order from the judge. That is the form that the clerk fills out that should reflect the sentence. The ones here are silent as to PRS. They don't say anything about it. So it's not clear. And docs under early and under Murray v. Gord, the state court case that opposing counsel is citing, docs needs, I'm sorry, the sentencing minutes is the sentencing transcript reflects the actual sentence pronounced by the judge. Are you saying that Mr. Rickner is incorrect to say that docs has taken the position that they're bound by the sentence and commitment order? As a general matter, they follow the sentence and commitment order. But the sentence and commitment orders here are silent. They don't say zero years of PRS. They don't say five years of PRS.  And the actual sentence — Well, wait a minute. If it doesn't say you go to jail, that means you don't go to jail. I take it if it doesn't say that there's a PRS, then there is no PRS. That's not an ambiguity that it doesn't say it. If it says it, it's in the order. And if it doesn't, it's not. Right? But the governing sentence is actually the sentence pronounced by the judge. And that is what this court — Is there any evidence whatsoever that at any time in the history of all of this stuff, anyone at docs made a practice of getting the minutes of every sentence and seeing what was on it? No, because they typically go by — Exactly. But that is because this case presents the unique problem because these forms hadn't been updated after Jenna's law to have the section for PRS. But more importantly, I want to point out that this question — But actually, the Justice Cardozo opinion on which Earley was based was about the clerk of court adding something to the written sentence that did not correspond to what had been pronounced in sentencing, right? Right. So it is the judge — So maybe they do have an obligation to get the minutes, or if they have reason for thinking that the commitment order diverges from what was pronounced in court, they have to do some further investigation. Is that right? So what your Honor's discussion illustrates is that this is a more fact-intensive inquiry that needs to be conducted in the context of impediments. And I actually want to point the court to the Batons' decision — Wait, wait, wait, wait, wait, wait, wait, wait. Let's not go quite so fast on this, that this means it's fact-intensive. There is no evidence ever that I've ever heard of — and you can tell me if I'm wrong, and there's something there in any of these cases — that at any time from the adoption of Jenna's law until way after all these events, that the Department of Corrections made some practice of looking at sentencing minutes. Is there any evidence of that? I mean, they typically receive the commitment order. It doesn't often include — And they act on that, right? That's correct, Your Honor. And they took the position in Murray v. Gord as a matter of state law that they're entitled to rely on that. Yes? So what — I'm sorry — what Murray v. Gord makes clear is that it is the sentence of the judge that is conclusive here as to what the actual sentence is. And in fact, when the — Is there any evidence that at any time ducks played by those rules that you're now telling us are the rules? Yes, the oral sentence controls. That means, I suppose, that if a defendant is arguing that I was — you know, the judgment commitment order was wrong, here's the sentencing minutes that they would be able to get that sentence corrected in court. But is there any evidence that the minutes of sentencing ever played any role in anything that ducks did ever? So there was no evidence submitted in this case because I want to note that this argument has first — Is there any evidence in any of the cases? Have they ever taken the position that that is what we did, that what we did was we looked at the minutes and we saw in cases that the minutes did not pronounce this and in other cases we saw that they did and we applied what the judges pronounced? Typically ducks goes to get those sentences corrected, which it can now do under the 2008 amendments. No, no, no. So your argument is that — is this the argument that when they designed the form, the sentencing commitment form, the clerk fills out, that's the order that they took the position was binding. At that time, the designers of the form understood that New York state law would just automatically add the sentence of five years of PRS. And so they didn't have a separate notation on the form for whether it was imposed or not. And so at this moment, they were looking at the form that failed to do that, but the law had just changed to say that that had to be noted separately, and yet no one had updated the forms to make that notation. And so this was a circumstance in which a reasonable person reading the form would have understood the silence on the five years of PRS to be an ambiguity because it wasn't clear whether it was just the way the form had been designed based on the earlier state of the law or if it hadn't been pronounced in sentencing. Right? That is our position, and it would be something that the district court can address on remand. In fact, the Batons' court looked at this type of question in the Batons' — I'm sorry, the class action litigation in conducting the Vincent analysis and actually concluded that it is the actual sentence that governs and that the argument that opposing counsel has raised here for the first time in his reply brief is not conclusive of allowing defendants to unilaterally release someone when it would have been flatly unlawful to do so because they were actually sentenced to a term of PRS. And the reason why you're saying that Mr. Richner's argument about the sentencing commitment order being binding isn't dispositive here is because of that, that actually it's the oral pronouncement that is binding, and so they would have had to go look for the oral pronouncement. That as well as the unique circumstances that Your Honor has actually discussed, which is that everyone understood that these were automatic. The docs, therefore, was under the assumption that the sentencing courts intended to impose those and may well have done so and therefore needed the actual sentence before unilaterally releasing someone that may have properly been sentenced to PRS. Okay. What about the qualified immunity argument about the plea agreement? So you said that it's based on the objective circumstances, and so the fact that it was discussed in court makes this case different. Mr. Richner said, no, it's not objective. It's about the subjective knowledge of these particular actors. You don't just look at objective circumstances. What's your position on that question? So the qualified immunity analysis is objective. I will note that the Supreme Court's decisions in White v. Pauley and the Mesa v. Hernandez are not entirely clear as to whether it's something that was actually known versus what was objectively knowable, but to the extent that the court determines that this particular fact of actual knowledge is necessary to that analysis, the court can remand on that issue as well. If the court has no further questions, we would urge the court to provide the same relief that it did in— Did you preserve in the district court that argument about qualified immunity? That was argued to the district court that this case is distinguishable on qualified immunity because of the issue with respect to the sentencing. That particular argument was not raised. The defense of qualified immunity was preserved, and as the footnote in our opening brief makes clear, qualified immunity can be raised at any time as long as the actual defense was preserved, but we understand, and this court has, frequently remanded when questions like this come up and if the court believes that there are factual issues that it cannot decide on appeal. Okay. Okay, thank you, Ms. Greenwald. The case is submitted.